*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

PROMOTE THE VOTE,

        Plaintiff-Appellant,

V

SECRETARY OF STATE,

        Defendant-Appellee,

and

HOUSE OF REPRESENTATIVES and SENATE,

        Intervening Appellees.

FOR PUBLICATION
July 20, 2020
9:00 a.m.

No. 353977
Court of Claims
LC No. 20-000002-MZ

---

PRIORITIES USA and RISE, INC.,

        Plaintiffs-Appellants,

V

SECRETARY OF STATE

        Defendant-Appellee,

and

SENATE and HOUSE OF REPRESENTATIVES,

        Intervening Defendants-Appellees.

No. 354096
Court of Claims
LC No. 19-000191-MZ

---

Before: METER, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

METER, P.J.

-1-

In Docket No. 353977, plaintiff, Promote the Vote (PTV), appeals by right a June 24, 2020 order entered by the Court of Claims. In Docket No. 354096, plaintiffs, Priorities USA and Rise, Inc. (collectively, the Priorities USA plaintiffs), also appeal by right the June 24, 2020 order. The Court of Claims order denied PTV's motion for summary disposition, as well as the Priorities USA plaintiffs' motion for a preliminary injunction, and granted the motions for summary disposition of the Secretary of State (Secretary) and the Senate and House of Representatives (collectively, the Legislature). This Court consolidated the two cases and ordered that the appeals would be decided without oral arguments. *Promote the Vote v Secretary of State*, unpublished order of the Court of Appeals, entered July 8, 2020 (Docket Nos. 353977, 354096).

Priorities USA is a "voter-centric progressive advocacy and service organization," which spends resources, including in the state of Michigan, to register young individuals to vote. Rise, Inc., is a "nonprofit organization that runs statewide advocacy and voter mobilization programs" in Michigan and California, as well as on a number of campuses throughout the country. Part of its mission is to increase voting access for college students. PTV is "a ballot question committee" that drafted the language of Proposal 3, a 2018 ballot proposal to amend Michigan's Constitution, collected more than 400,000 signatures in order to get the proposal placed on the ballot, and led the campaign for the proposal's passage.

On appeal, PTV and the Priorities USA plaintiffs argue that the proof of residency requirements in MCL 168.497(2)-(4), the challenged ballot procedure in MCL 168.497(5), and the Secretary's automatic voter registration policy unduly burden the rights in 1963 Const, art 2, § (4)(1), and are therefore unconstitutional. PTV and the Priorities USA plaintiffs also argue that MCL 168.497 violates the Equal Protection Clause of the Michigan Constitution. For the reasons discussed below, we affirm.

## I. LEGAL BACKGROUND

In the 2018 general election, Michigan voters approved Proposal 3, which made changes to Michigan's election law. Specifically, Proposal 3 amended 1963 Const, art 2, § 4. The article now provides:

> (1) Every citizen of the United States who is an elector qualified to vote in Michigan shall have the following rights:
>
> (a) The right, once registered, to vote a secret ballot in all elections.
>
> * * *
>
> (d) The right to be automatically registered to vote as a result of conducting business with the secretary of state regarding a driver's license or personal identification card, unless the person declines such registration.
>
> (e) The right to register to vote for an election by mailing a completed voter registration application on or before the fifteenth (15th) day before that election to an election official authorized to receive voter registration applications.

(f) The right to register to vote for an election by (1) appearing in person and submitting a completed voter registration application on or before the fifteenth (15th) day before that election to an election official authorized to receive voter registration applications, or (2) beginning on the fourteenth (14th) day before that election and continuing through the day of that election, appearing in person, submitting a completed voter registration application and providing proof of residency to an election official responsible for maintaining custody of the registration file where the person resides, or their deputies.[1]  Persons registered in accordance with subsection (1)(f) shall be immediately eligible to receive a regular or absent voter ballot.

* * *

All rights set forth in this subsection shall be self-executing.  This subsection shall be liberally construed in favor of voters' rights in order to effectuate its purposes. Nothing contained in this subsection shall prevent the legislature from expanding voters' rights beyond what is provided herein.  This subsection and any portion hereof shall be severable.  If any portion of this subsection is held invalid or unenforceable as to any person or circumstances, that invalidity or unenforceability shall not affect the validity, enforceability, or application of any other portion of this subsection.

(2) Except as otherwise provided in this constitution or in the constitution or laws of the United States[,] the legislature shall enact laws to regulate the time, place and manner of all nominations and elections, to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting.  No law shall be enacted which permits a candidate in any partisan primary or partisan election to have a ballot designation except when required for identification of candidates for the same office who have the same or similar surnames.[2]

---

[1] We will refer to the period "beginning on the fourteenth (14th) day before that election and continuing through the day of that election" as the "14-day period."

[2] Before the passage of Proposal 3, 1963 Const, art 2, § 4 consisted of one paragraph, which was very similar to the current paragraph in § 4(2).  It provided:

> The legislature shall enact laws to regulate the time, place and manner of all nominations and elections, except as otherwise provided in this constitution or in the constitution and laws of the United States.  The legislation shall enact laws to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting.  No law shall be enacted which permits a candidate in any partisan primary or partisan election to have a ballot designation except when

Following the 2018 general election, the Legislature enacted 2018 PA 603, which amended MCL 168.497. The first five provisions of MCL 168.497 now provide:

> (1) An individual who is not registered to vote but possesses the qualifications of an elector as provided in [MCL 168.492] may apply for registration to the clerk of the county, township, or city in which he or she resides in person, during the clerk's regular business hours, or by mail or online until the fifteenth day before an election.

> (2) An individual who is not registered to vote but possesses the qualifications of an elector as provided in [MCL 168.492] or an individual who is not registered to vote in the city or township in which he or she is registering to vote may apply for registration in person at the city or township clerk's office of the city or township in which he or she resides from the fourteenth day before an election and continuing through the day of the election. An individual who applies to register to vote under this subsection must provide to the city or township clerk proof of residency in that city or township. For purposes of this subsection, proof of residency includes, subject to subsection (3), any of the following:

> (a) An operator's or chauffeur's license issued under the Michigan vehicle code, 1949 PA 300, MCL 257.1 to 257.923, or an enhanced driver license issued under the enhanced driver license and enhanced official state personal identification act, 2008 PA 23, MCL 28.301 to 28.308.

> (b) An official state personal identification card issued under 1972 PA 222, MCL 28.291 to 28.300, or an enhanced official state personal identification card issued under the enhanced driver license and enhanced official state personal identification card act, 2008 PA 23, MCL 28.301 to 28.308.[3]

> (3) If an application for voter registration under subsection (2) does not have proof of residency as that term is defined in subsection (2), the applicant may provide as his or her proof of residency any other form of identification for election

---

required for identification of candidates for the same offense which have the same or similar surnames.

[3] A person registering to vote in the 14-day period does not provide proof of residency simply by presenting a Michigan driver's license or personal identification card. Because the individual "must provide to the city or township clerk proof of residency in that city or township," the Michigan driver's license or personal identification card must include an address located in either the city or township. Both the Priorities USA plaintiffs and the Secretary read MCL 168.497(2) in the same manner. We will refer to a Michigan's driver's license or personal identification card that can establish proof of residency under MCL 168.497(2) as a "current Michigan driver's license or personal identification card."

purposes as that term is defined in [MCL 168.2] and 1 of the following documents that contains the applicant's name and current residence address:

(a) A current utility bill.

(b) A current bank statement.

(c) A current paycheck, government check, or other government document.

(4) If an application for voter registration under subsection (2) does not have identification for election purposes, the applicant may register to vote if he or she signs an affidavit indicating that the applicant does not have identification for election purposes and the applicant provides 1 of the following documents that contains the applicant's name and current residence address:

(a) A current utility bill.

(b) A current bank statement.

(c) A current paycheck, government check, or other government document.

(5) Immediately after approving a voter registration application, the city or township clerk shall provide to the individual registering to vote a voter registration receipt that is in a form as approved by the secretary of state. If an individual registers to vote in person 14 days or less before an election or registers to vote on election day, and that applicant registers to vote under subsection (3) or (4), the ballot of that elector must be prepared as a challenged ballot as provided in [MCL 168.727] and must be counted as any other ballot is counted unless determined by a court of law under [MCL 168.747 or MCL 168.748] or any other applicable law.

MCL 168.2(k) defines "identification for election purposes" as the following: "[a]n operator's or chauffeur's license issued under the Michigan vehicle code . . . or an enhanced driver license issued under the enhanced driver license and enhanced official state personal identification card act"; "[a]n official state personal identification card . . . or an enhanced official state personal identification card issued under the enhanced driver license and enhanced official state personal identification card act"; a current operator's or chauffeur's license issued by another state; a current state personal identification card issued by another state; a current state government issued photo identification card; a current United States passport or federal government issued photo identification card; a current military photo identification card; a current tribal photo identification card; or "[a] current student photo identification card issued by a high school in this state, an institution of higher education in this state described in section 4, 5, or 6 of article VIII of the state constitution of 1963, a junior college or community college established under section 7 of article VIII of the state constitution of 1963, or another accredited degree[-] or certificate[-]granting college or university, junior college, or community college located in this state."

An election inspector must identify, as provided in MCL 168.745 and MCL 168.746, a challenged ballot. MCL 168.727(2)(a).[4] Under MCL 168.745, the election inspectors "shall cause to be plainly endorsed on said ballot, with pencil, before depositing the same in the ballot box, the number corresponding to the number placed after such voter's name on the poll lists without opening the same[.]" To prevent the identification of challenged ballots, the election inspectors "shall cause to be securely attached to said ballot, with mucilage or other adhesive substance, a slip or piece of blank paper of the same color and appearance, as nearly as may be, as the paper of the ballot, in such manner as to cover and wholly conceal said endorsement but not to injure or deface the same[.]" MCL 168.746.

MCL 168.747 provides:

> In case of a contested election, on the trial thereof before any court of competent jurisdiction, it shall be competent for either party to the cause to have produced in court the ballot boxes, ballots and poll books used at the election out of which the cause has arisen, and to introduce evidence proving or tending to prove that any person named on such poll lists was an unqualified voter at the election aforesaid, and that the ballot of such person was received. On such trial, the correspondence of the number endorsed on a ballot as herein provided with the number of the ballot placed opposite the name of any person on the poll lists shall be received as prima facie proof that such ballot was cast by such person: Provided, That the ballot of no person shall be inspected or identified under the provisions of this chapter unless such person shall consent thereto in writing, or unless such person has been convicted of falsely swearing in such ballot, or unless the fact that

---

[4] Any voter may be challenged under MCL 168.727. *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich 1, 14 n 24; 740 NW2d 444 (2007). Under MCL 168.727(1), an election inspector shall challenge an applicant applying for a ballot if the inspector knows or has good reason to know that the applicant is not a qualified and registered elector of the precinct. A registered elector of the precinct present in the polling place may challenge the right of anyone attempting to vote if the elector knows or has good reason to suspect that the individual is not a registered elector in that precinct. *Id.* Additionally, an election inspector or other qualified challenger may challenge the right of an individual attempting to vote who has previously applied for an absent voter ballot and who on election day is claiming to have never received the absent voter ballot or to have lost or destroyed the absent voter ballot. *Id.* These challenges shall not be made indiscriminately or without good cause. MCL 168.727(3). If a person attempting to vote is challenged, the person shall be sworn by one of the election inspectors to truthfully answer the questions asked of the person concerning the person's qualifications as an elector. MCL 168.729. If the person's answers to the questions show that the person is a qualified elector in the precinct, the person "shall be entitled to receive a ballot and vote." *Id.* The person's ballot shall be marked as required by MCL 168.745 and MCL 168.746, but it is counted as a regular ballot. MCL 168.727(2)(a); *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich at 14 n 24.

such person was an unqualified elector at the time of casting such ballot has been determined.[5]

See also *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich 1, 14 n 24; 740 NW2d 444 (2007) ("The ballot cast by a challenged voter is marked (and the mark subsequently concealed) with a number corresponding to the voter's poll list number, and is counted as a regular ballot. MCL 168.745; MCL 168.746. The marked ballot becomes relevant only in the event of litigation surrounding a contested election, where the challenged voter's qualifications to vote are disputed.").

According to the Priorities USA plaintiffs, following the passage of Proposal 3, the Secretary began to automatically register to vote those who conducted business with her regarding a driver's license or personal identification card if they were at least 17½ years of age (the AVR Policy). To support this claim, the Priorities USA plaintiffs provide a press release from the Secretary that announced that she had instituted automatic voter registration.[6] But the press release says nothing about automatic voter registration only applying to those who are at least 17½ years of age. However, the Secretary does not dispute the Priorities USA plaintiffs' claim.

## II. PROCEDURAL HISTORY

On November 22, 2019, Priorities USA filed suit against the Secretary in the Court of Claims. An amended complaint was filed on January 21, 2020, by the Priorities USA plaintiffs.

---

[5] MCL 168.748 provides:

> After issue joined in any case of contested election, either party to the cause may present a petition to the court before which the said cause is to be tried, setting forth among other things that the petitioner has good reason to believe and does believe that 1 or more voters at the election out of which the cause has arisen, naming him or them, and stating his or their place of residence, were unqualified to vote at such election; that he believes the same can be established by competent testimony; that the ballot or ballots of such voter or voters were received after being challenged, as provided by law; and praying that the court may try and determine the question of the qualification of such voter or voters at said election, which petition shall be verified by the oath of the petitioner or some other person acquainted with the facts, and thereupon the court shall direct an issue to be framed, within a time to be fixed therefor, for the purpose of determining the question of the qualifications of the voter or voters named in said petition to vote at said election; and such issue shall stand for trial as in other cases, and the verdict of the jury or judgment of the court upon such issue so made shall be received, upon the trial of the principal issue in said cause, as conclusive evidence to establish or to disprove the said qualifications of said voter or voters.

[6] Secretary of State, *Secretary Benson Announces Modernized Voter Registration on National Voter Registration Day* <https://www.michigan.gov/sos/0,4670,7-127-1640_9150-508246--,00.html> (accessed July 14, 2020).

On January 6, 2020, PTV filed suit against the Secretary in the Court of Claims. PTV's complaint and the Priorities USA plaintiffs' amended complaint both advanced similar allegations. PTV and the Priorities USA plaintiffs asserted that the Legislature's proof of residency definition in MCL 169.497 and the requirement that some voters be issued a challenge ballot unduly burdened the self-executing provisions in 1963 Const, art 2, § 4. Additionally, the proof of residency definition violated the Equal Protection Clause of the Michigan Constitution by burdening the right to vote, and by treating similarly situated voters differently: those who registered to vote within the 14-day period, but who could not show proof of residency with a current Michigan driver's license or personal identification card were issued a challenged ballot. The Priorities USA plaintiffs finally asserted that the Secretary's AVR Policy burdened and curtailed the right in 1963 Const, art 2, § 4(1)(d).

Following the consolidation of the two cases, and the Legislature's intervention, the Legislature filed a motion for summary disposition under MCR 2.116(C)(10).[7] The Legislature argued that the proof of residency amendment in MCL 168.497 was a constitutional exercise of its power to preserve the purity of elections, guard against abuses of the elective franchise, and provide for a system of voter registration and absentee balloting. The Legislature further argued that the Michigan Constitution, following the passage of Proposal 3, did not define proof of residency, which essentially required the Legislature to exercise its constitutional powers to define the phrase. The definition of proof of residency did not violate the Equal Protection Clause because the statute provided reasonable, nondiscriminatory restrictions; thus, it was subject to only rational basis review. The state's interest in preventing voter fraud justified the restrictions. Finally, the Legislature argued that the AVR Policy was consistent with 1963 Const, art 2, § 4 because the right to be automatically registered to vote only applies to those who are entitled to register to vote, namely individuals who are 17½ years of age or older.

The Secretary also moved for summary disposition under MCR 2.116(C)(10). Regarding the AVR Policy, the Secretary was automatically registering individuals to vote pursuant to the Michigan Constitution and statute, not a policy. The Secretary also argued that the definition of proof of residency did not impose an unconstitutional burden on the right to vote because the Legislature properly supplemented 1963 Const, art 2, § 4. Furthermore, an individual can register to vote in the 14-day period by signing an affidavit that the individual does not have a form of identification for election purposes and by presenting a document from a broad array of documents listed in the statute. Relatedly, an individual whose ballot must be marked as a challenged ballot casts either a regular ballot or an absent voter ballot. The ballot is merely marked so that it can later be identified if an election is contested. A challenged ballot does not require the individual to reveal the content of the ballot. Individuals who cannot produce a current Michigan driver's license or personal identification card and are required to vote a challenged ballot are not denied equal protection. Individuals who must vote a challenged ballot are not similarly situated to individuals who have a current Michigan's driver's license or personal identification card. The

---

[7] The Court of Claims granted the Legislature's motion to intervene in lower court no. 19-000191-MZ, and the Priorities USA plaintiffs do not challenge that order on appeal.

use of alternative, and sometimes less objective, forms of proof of residency reasonably warrants additional procedural requirements.

In PTV's motion for summary disposition under MCR 2.116(C)(10), PTV argued that MCL 168.497 imposed additional obligations on the self-executing rights of 1963 Const, art 2, § 4. The term "residence" is generally understood as the place where a person lives. In MCL 168.497, the Legislature defined proof of residency to mean more than simply proof of where one lives. It defined proof of residency to include proof of identity, i.e., a driver's license or personal identification card. Although MCL 168.497 did not require a person registering to vote in the 14-day period to provide a current Michigan driver's license or personal identification card, the Legislature narrowly limited the documents that it would accept as proof of residency, which curtailed and burdened the rights guaranteed by 1963 Const, art 2, § 4. Additionally, under MCL 168.497, only those who provide a current Michigan driver's license or personal identification card receive a regular or absent voter ballot. All others receive a challenged ballot, which is not a regular or absent voter ballot and which is also not a secret ballot.

PTV also argued that MCL 168.497 failed to provide equal protection of the law. The statute creates three classes of voters: (1) those who present a current Michigan driver's license or personal identification card, and who are allowed to vote a regular or absent voter ballot; (2) those who either submit other proof of identity, or who execute an affidavit attesting that they do not possess any of the acceptable forms of proof of identity, with one of a limited number of documents establishing residency, and who are required to vote a challenged ballot, and (3) those who do not have one of the limited number of documents establishing residency, and who are not allowed to vote. MCL 168.497 imposed a severe burden on the rights of the voters in the second class. Those voters had to vote a challenged ballot, which required extra time by the clerk's office, which required the voters to wait longer. MCL 168.497 also imposed a severe burden on the rights of the voters in the third class. These voters were deprived of their right to vote, and there was no compelling state interest justifying the deprivation, according to PTV.

The Priorities USA plaintiffs moved for a preliminary injunction, attaching three affidavits from two students at the University of Michigan and one student at Michigan State University that detailed their difficulties in registering to vote in the 14-day period. The Priorities USA plaintiffs also attached a report from Michael E. Herron, Ph.D., which detailed the results from two surveys he commissioned. In the first survey, 2,000 Michigan residents, who were eligible to vote and planned to vote in 2020, were asked about whether they had the documents listed in MCL 168.497. According to Dr. Herron, 1.6% of the participants answered that they did not have documentation that would satisfy the requirements of MCL 168.497. 1.6% of citizens of voting age in Michigan is 159,320 individuals. According to Dr. Herron, the survey also showed that approximately 6% of the participants who were younger than 25 years of age lacked documentation that would satisfy the requirements of MCL 168.497. The participants in the second survey were students at Michigan colleges or universities. According to Dr. Herron, of the students who were United States citizens and not registered to vote in Michigan, 16.9% of them did not have documentation that would satisfy the requirements of MCL 168.497. Dr. Herron believed that approximately 15,514 of the college and university students in Michigan would not be able to provide proof of residency under MCL 168.497. Dr. Herron also reviewed records provided by the Secretary, which indicated that, in the five elections following the passage of Proposal 3, 264 individuals (94

of whom were 21 years of age or younger) were not able to register in the 14-day period for the upcoming election because they lacked proof of residency.

On June 24, 2020, the Court of Claims issued an opinion and order granting the Legislature's and the Secretary's motions for summary disposition, denying PTV's motion for summary disposition, and denying the Priorities USA plaintiffs' motion for a preliminary injunction. The Court of Claims first addressed the claim that the amendments of 1963 Const, art 2, § 4, following the passage of Proposal 3, were "self-executing" and that the requirements of MCL 168.497(2)-(5) were unconstitutional because they unduly restricted the new rights recognized in the Michigan Constitution. The Court of Claims held that while the Legislature may not enact laws that impose additional burdens on self-executing constitutional provisions, it may enact laws that supplement those provisions, such as laws that provide clarity and safeguard against abuses. Because the phrase proof of residency was undefined in Const 1963, art 2, § 4, and the residence of a voter is essential for voting purposes, the Legislature properly supplemented the constitutional provision when it defined proof of residency.

Next, the Court of Claims rejected the argument that the AVR Policy unduly burdened and curtailed the rights in 1963 Const, art 2, § 4. The AVR Policy was not a policy, but "rather a restatement of state law, specifically MCL 168.493a and MCL 168.492, and is consistent with the right of 'electors qualified to vote' being entitled to automatically register to vote when doing business with the secretary of state offices." Further, the Michigan Constitution defines an elector qualified to vote as any resident who has reached the age of 18, and a qualified voter may be automatically registered to vote as a result of conducting business with the secretary of state. Under MCL 168.492, an elector qualified to vote is someone 17½ years of age or older, "and nowhere does the Constitution grant individuals under the age of [17½] the right to be automatically registered when conducting business with the secretary of state."

The Court of Claims then addressed whether MCL 168.497 placed an unconstitutional burden on voters. The court noted that, although the right to vote was not enumerated in either the federal or state constitutions, the United States Supreme Court has held that citizens have a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction. Furthermore, the court held, the right to vote is not absolute. A state has the power to impose voter qualifications and to regulate access to the franchise in many different ways. The court rejected the argument that the Legislature's definition of proof of residency in MCL 168.497 placed a severe burden on the constitutional right to register to vote in the 14-day period. The statute imposed some burden on voters—the statute requires an individual to bring to the election office or polling place some form of proof of residency. But, this was a reasonable, nondiscriminatory restriction, given the wide variety of documents that constituted acceptable ways to establish proof of residency. Additionally, if a voter did not have an acceptable proof of residency in the form of a driver's license or a personal identification card, "that person may vote with a challenged ballot that is counted that day, the same as all other ballots," so long as they produce one of the acceptable forms of proof of residency.

The Court of Claims also rejected the Priorities USA plaintiffs' suggestion that younger voters will be most harmed by MCL 168.497. First, because it was a facial challenge to MCL 168.497, there could not be a focus on any possible effects on a discrete population; the focus must be on the voting population as whole. Second, the argument "overlook[ed] the broad range of

-10-

documents that suffice under the statute, the majority of which are readily available to college students, and the fact that registration can be accomplished over the internet, something 'younger voters' are surely able to utilize." Third, the argument gave no credence to the young voters' ability to understand and follow clear voter registration procedures.

Finally, the Court of Claims rejected the argument that the requirement in MCL 168.497(5) that challenged ballots be issued to those who register to vote in the 14-day period without providing a current Michigan driver's license or personal identification card violates equal protection because it denied those voters the right to a secret ballot. The court reasoned that challenged ballots were treated the same as any other ballot on election day. "[D]espite [the challenged ballot] being marked on the outside as challenged, upon presentment of identification, the voter was eligible to receive, and did receive, a regular ballot," which complied with 1963 Const, art 2, § 4(1)(f). To the extent that any burden was placed on a voter's right, it was minimal. A challenged ballot was a secret ballot because it was counted in the same way as a normal ballot, and the contents were not revealed to the public. The Court of Claims explained:

> It is only in the event of a contested election, where the challenged ballot is at issue, that the ballot may be inspected or identified; however, this inspection may only occur with either: the voter's written consent; or only *after* the individual has been convicted of falsely swearing the ballot; or the voter was deemed to be unqualified. MCL 168.474. Therefore, the only way for the vote to be revealed—absent express written consent—is under court order and even then, only in two limited circumstances that require a prior determination of falsehood. This is not a severe burden, and it places no burden on the voter at the time of voting, nor does it impact the tabulation of those particular votes cast on election day.

> In contrast, the state has an interest in ensuring the integrity of ballots should it be needed. This specific interest is properly served by this regulation, as in the event of suspected voter fraud, the court may reveal the identity of the voter and a determination can be made. Overall, the burden imposed on voters' rights is minimal, and the legislation is within the scope of the state's interest in preserving the purity of elections.

Thus, the Court of Claims granted summary disposition in favor of the Legislature and the Secretary, and dismissed the complaints with prejudice. This appeal follows.

III. DISCUSSION

On appeal in Docket No. 353977, PTV argues that the Court of Claims erred in concluding that there is no constitutional right to vote; MCL 168.497 impermissibly imposed additional obligations on the self-executing provisions of 1963 Const, art 2, § 4(1)(a) and § 4(1)(f)(2); the requirement of issuing a challenged ballot was burdensome, unconstitutional, and served no legitimate state interest. In Docket No. 354096, the Priorities USA plaintiffs similarly argue that the Court of Claims erred in concluding that MCL 168.497 did not violate the self-executing provisions of 1963 Const, arts 1, § 2 and 2, § 4; the AVR Policy did not violate the self-executing provision of 1963 Const, art 2, § 4; and they were entitled to a preliminary injunction. We disagree.

## A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Ellison v Dep't of State*, 320 Mich App 169, 175; 906 NW2d 221 (2017). Summary disposition is proper under MCR 2.116(C)(10) if, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."

This Court also reviews de novo questions of constitutional law. *Bonner v Brighton*, 495 Mich 209, 221; 848 NW2d 390 (2014). "A statute challenged on a constitutional basis is 'clothed in a presumption of constitutionality,' and the burden of proving that a statute is unconstitutional rests with the party challenging it." *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich 1, 11; 740 NW2d 444 (2007) (citation omitted).

A challenge to the constitutionality of a statute is either a facial challenge or an as-applied challenge. *Bonner*, 495 Mich at 223 nn 26-27; *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich at 11 & n 20. "A facial challenge is a claim that the law is invalid *in toto*—and therefore incapable of any valid application," whereas an as-applied challenge "considers the specific application of a facially valid law to individual facts." *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich at 11 & n 20 (quotation marks and citation omitted). The challenges to MCL 168.497 are facial challenges. PTV and the Priorities USA plaintiffs are asking that MCL 168.497(2)-(5) be declared unconstitutional in all circumstances. They do not claim the statute is unconstitutional only when applied in a specific circumstance.

"A party challenging the facial constitutionality of a [statute] 'faces an extremely rigorous standard.' " *Bonner*, 495 Mich at 223 (citation omitted). A plaintiff "must establish that no set of circumstances exists under which the act would be valid" and "[t]he fact that the . . . act might operate unconstitutionally under some conceivable set of circumstances is insufficient' " to render the act invalid. *Council of Orgs & Others for Ed About Parochiaid, Inc v Governor*, 455 Mich 557, 568; 566 NW2d 208 (1997) (quotation marks, alteration marks, and citation omitted). Indeed, "if any state of facts reasonably can be conceived that would sustain [a legislative act], the existence of the state of facts at the time the law was enacted must be assumed." *Id.* (quotation marks, alteration marks, and citation omitted). "[B]ecause facial attacks, by their nature, are not dependent on the facts surrounding any particular decision, the specific facts surrounding plaintiffs' claim are inapposite." *Bonner*, 495 Mich at 223.

## B. CONSTITUTIONAL RIGHT TO VOTE

PTV and the Priorities USA plaintiffs argue that the Court of Claims erred by stating that the right to vote was not expressly enumerated in the Michigan Constitution. Before addressing this argument, we find it necessary to detail the history of the right to vote.

In the Court of Claims opinion and order, the court stated that "the right to vote is not enumerated in either the federal or state constitution . . . ." Although there are numerous provisions in the United States Constitution that prevent states from discriminating against specific groups by taking away their right to vote, there is no specific enumeration of the right to vote. See

*San Antonio Indep Sch Dist v Rodriguez*, 411 US 1, 35 n 78; 193 S Ct 1278; 36 L Ed 2d 16 (1973) ("[T]he right to vote, per se, is not a constitutionally protected right . . . ."). For example, the Fifteenth Amendment states: "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude." US Const, Am XV. Nearly identical language is used in the Nineteenth and Twenty-Sixth Amendments, which prohibit denying or abridging the right to vote on the basis of gender or age, respectively. See US Const, Ams XIX and XXVI.

Despite the lack of a positive right to vote, the United States Supreme Court, "[i]n decision after decision, . . . has made clear that a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v Blumstein*, 405 US 330, 336; 92 S Ct 995; 31 L Ed 2d 274 (1972). Indeed, "[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v Sanders*, 376 US 1, 17; 84 S Ct 526, 534-535; 11 L Ed 2d 481 (1964). However, "[t]his equal right to vote is not absolute; the States have the power to impose voter qualifications, and to regulate access to the franchise in other ways." *Dunn*, 405 US at 336 (quotation marks and citation omitted).

Following the passage of Proposal 3 in Michigan, this state's constitution now reads: "Every citizen of the Unites States who is an elector qualified to vote in Michigan shall have the following rights: The right, once registered, to vote a secret ballot in all elections." 1963 Const, art 2, § 4(1)(a). Although decided before the passage of Proposal 3, and the relevant amendment of our state's constitution, our Supreme Court stated in *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich at 16, that "the right to vote is an implicit fundamental political right that is preservative of all rights." (Quotation marks and citation omitted). Our Supreme Court continued: "However, '[t]his equal right to vote is not absolute . . . .' " *Id.*, quoting *Dunn*, 405 US at 336 (alteration in original; internal quotation marks omitted).

PTV and the Priorities USA plaintiffs assert that 1963 Const, art 2, § 4(1)(a) provides a constitutional right to vote. This section unambiguously provides that a qualified citizen has the "right, once registered, to vote a secret ballot in all elections." 1963 Const, art 2, § 4(1)(a). However, this section does not provide that an individual has an absolute constitutional right to vote; the individual must first be a qualified elector who has registered to vote. *Id.* Although the Michigan Constitution now expressly provides for the right to vote, certain requirements must be met before an individual can exercise his or her fundamental political right to vote. Despite the Court of Claims' quotation of caselaw predating the passage of Proposal 3, the court's opinion recognized the constitutionally protected status of the right to vote. Thus, there is no error requiring reversal.

## C. SELF-EXECUTING CONSTITUTIONAL PROVISIONS

PTV and the Priorities USA plaintiffs argue that the Legislature's definition of proof of residency in MCL 168.497 and the requirement in MCL 168.497(5) that a challenged ballot be issued to anyone who registers to vote in the 14-day period without providing a current Michigan driver's license or personal identification card unduly burden the rights in 1963 Const, art 2, § (4)(1)(f). They claim that, because the rights in 1963 Const, art 2, § 4(1) are self-executing

-13-

rights, the statutory provisions are unconstitutional. The Priorities USA plaintiffs also argue that the Secretary's AVR Policy unduly burdens the right in 1963 Const, art 2, § (4)(1)(d). We disagree.

There is no dispute among the parties that the rights in Const 1963, art 2, § 4(1) are self-executing. "A constitutional provision is deemed self-executing, if it supplies a sufficient rule, by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced[.]" *League of Women Voters of Mich v Secretary of State*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket Nos. 350938, 351073); slip op at 11 (quotation marks and citation omitted). While the Legislature may not impose additional obligations on a self-executing constitutional provision, *Wolverine Golf Club v Secretary of State*, 384 Mich 461, 466; 185 NW2d 392 (1971); *Durant v Dep't of Ed (On Second Remand)*, 186 Mich App 83, 98; 463 NW2d 461 (1990), it may enact laws that supplement a self-executing constitutional provision, see *Wolverine Golf Club*, 384 Mich at 466. Statutes that supplement a self-executing constitutional provision may not curtail the constitutional rights or place any undue burdens on them. See *id.*; *Durant*, 186 Mich App at 98. Additionally, the statutes must be in harmony with the spirit of the Michigan Constitution and their object must be to further the exercise of the constitutional rights and make them more available. *League of Women Voters of Mich*, ___ Mich App at ___; slip op at 11. Statutes that supplement a self-executing provision may be desirable, "by way of providing a more specific and convenient remedy and facilitating the carrying into effect or executing of the rights secured, making every step definite, and safeguarding the same so as to prevent abuses." *Wolverine Golf Club v Secretary of State*, 24 Mich App 711, 730; 180 NW2d 820 (1970) (opinion by LESINSKI, C.J.), aff'd 384 Mich 461 (1971) (quotation marks and citation omitted).

## 1. PROOF OF RESIDENCY

Under 1963 Const, art 2, § 4(1)(f)(2), a person who seeks to register to vote "beginning on the fourteenth (14th) day before that election and continuing through the day of that election" must submit "a completed voter registration application" and provide "proof of residency." A person's residence, for purposes of Michigan election law, is the "place at which a person habitually sleeps, keeps his or her personal effects, and has a regular place of lodging. If a person has more than 1 residence . . . that place at which the person resides the greater part of the time shall be his or her official residence[.]" MCL 168.11(1). An individual may only vote in the township or city in which the individual resides. See MCL 168.491; MCL 168.492. Because an individual may only vote in the township where he or she resides, the individual's residence dictates which candidates and proposals the individual can vote for.

MCL 168.497(2) requires an individual who applies to register to vote in the 14-day period to provide proof of residency. This is not an additional requirement; 1963 Const, art 2, § 4(1)(f)(2) specifically provides that a person who registers to vote in the 14-day period must provide proof of residency. In MCL 168.497(2)-(5), the Legislature defined proof of residency. Because there is no definition of proof of residency in 1963 Const, art 2, § 4(1), the Legislature's definition of proof of residency is a law that supplements the constitutional provision.

A definition from the Legislature of proof of residency was desirable. *Wolverine Golf Club*, 24 Mich App at 730. Absent a statutory definition of proof of residency, confusion and disorder could arise during the 14-day period and on election day itself. Any person who wanted

to register to vote in the 14-day period would be left to wonder what documents would be accepted as proof of residency. Each city or township clerk would have to make his or her own determination regarding what is acceptable proof of residency. Under these individualized determinations, the documents that would be accepted as proof of residency could be different in each of Michigan's cities and townships. Consequently, a definition of proof of residency makes definite what documents an individual must bring to register to vote in the 14-day period and creates a uniform standard in each of Michigan's voting jurisdictions. *Id*. Furthermore, the Legislature has the constitutional authority under 1963 Const, art 2, § 4(2) to enact laws to preserve the purity of elections,[8] to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting. Accordingly, a legislative definition of proof of residency, which makes definite what documents can be used as proof of residency, is in harmony with the Legislature's obligations under the Michigan Constitution concerning the administration of elections and furthers the exercise of voter registration in the 14-day period. *League of Women Voters of Mich*, ___ Mich App at ___; slip op at 11.

Additionally, even though the Priorities USA plaintiffs have presented evidence that the Legislature's definition of proof of residency in MCL 168.497 has prevented, and may prevent, individuals who are qualified to vote from registering in the 14-day period, the Legislature's definition of proof of residency does not unduly burden the right to register to vote in the 14-day period. Under MCL 168.497, a person provides proof of residency if the person presents either of the following: (1) a current Michigan driver's license or personal identification card, MCL 168.497(2); (2) "any other form of identification for election purposes," which includes driver's licenses and personal identification cards issued by other states and student photo identification cards, see MCL 168.2(k), along with a current utility bill, a current bank statement, or a current paycheck, government check, or other government document, MCL 168.497(3); or (3) an affidavit indicating that the individual does not have "identification for election purposes" and a current utility bill, a current bank statement, or a current paycheck, government check, or other government document, MCL 168.497(4).

The Legislature's definition of proof of residency allows a person to register to vote in the 14-day period with a broad array of common, ordinary types of documents that are available to persons of all voting ages. The Legislature did not provide a narrow list of documents that individuals who register to vote in the 14-day period must present as proof of residency. Moreover, 1963 Const, art 2, § 4(1)(f) requires an individual to provide proof of residency when registering to vote in the 14-day period, and MCL 168.497(2)-(4) defines what documents are acceptable to fulfill that constitutional requirement. Because the Legislature's definition does not unduly burden the right to register to vote in the 14-day period, the definition is a proper supplement to 1963 Const, art 2, § 4(1)(f).

---

[8] "The phrase 'purity of elections' does not have a single precise meaning. However, it unmistakably requires fairness and evenhandedness in the election laws of this state." *Barrow v Detroit Election Comm*, 305 Mich App 649, 676; 854 NW2d 489 (2014) (quotation marks and citation omitted).

-15-

## 2. CHALLENGED BALLOTS

We reject the claims of PVT and the Priorities USA plaintiffs that MCL 168.497(5), which requires that a challenged ballot be issued to anyone who registers to vote in the 14-day period without providing a current Michigan driver's license or personal identification card, unduly burdens the rights in 1963 Const, art 2, § 4(1)(a) and (f). Under 1963 Const, art 2, § 4(1)(f), a person who registers to vote in accordance with that subsection "shall be immediately eligible to receive a regular or absent voter ballot." Under 1963 Const, art 2, § 4(1)(a), a voter is entitled to "a secret ballot."

Michigan election law defines a "regular ballot" as "a ballot that is issued to a voter on election day at a polling place location." MCL 168.3(h). An "absent voter ballot" is "a ballot that is issued to a voter through the absentee voter process." MCL 168.2(b). A challenged ballot is not a third type of ballot. Rather, a challenged ballot is either a regular ballot or an absent voter ballot that is marked (and the mark subsequently concealed) with the number corresponding to the voter's poll list number. See MCL 168.745; MCL 168.746; MCL 168.761(6); *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich at 14 n 24. Notably, a challenged ballot is entered and tabulated with all the other ballots that are cast. See MCL 168.497(5); *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich at 14 n 24.

Furthermore, a challenged ballot is a secret ballot. Generally, a secret ballot is one that prevents anyone else from knowing how the individual voted. See *Helme v Bd of Election Comm'rs of Lenawee Co*, 149 Mich 390, 391-393; 113 NW 6 (1907); *People v Cicott*, 16 Mich 283, 297 (1868), overruled on other grounds by *Petrie v Curtis*, 387 Mich 436 (1972). The mark on a challenged ballot, either before or after it is concealed, does not indicate to anyone how the individual voted. Long before Proposal 3 was passed, the Supreme Court recognized that 1963 Const, art 2, § 4 provided a right to a secret ballot. *Belcher v Mayor of Ann Arbor*, 402 Mich 132, 134; 262 NW2d 1 (1978). This right is not absolute; upon a showing that the voter acted fraudulently, the right can be abrogated. *Id.* ("We hold that a citizen's right to a secret ballot in all elections as guaranteed by Const 1963, art 2, § 4, cannot be so abrogated in the absence of a showing that the voter acted fraudulently."). In a contested election, a challenged ballot may be inspected. See MCL 168.747. But, it may only be inspected if the person consents, the person has been convicted of falsely swearing in such ballot, or if it has been determined that such person was an unqualified elector at the time of casting the ballot. *Id.* Because the right to a secret ballot is not absolute, the fact that a challenged ballot may be inspected in a contested election, MCL 168.474, does not mean that it is not a secret ballot.

## 3. AVR POLICY

The Secretary's AVR Policy does not unduly burden the right in 1963 Const, art 2, § 4(1)(d). Under 1963 Const, art 2, § 4(1), "[e]very citizen of the United States who is an elector qualified to vote in Michigan shall have [certain] rights[.]" In other words, the rights listed in 1963 Const, art 2, § 4(1), including "[t]he right to be automatically registered to vote as a result of conducting business with the secretary of state regarding a driver's license or personal identification card," are rights of "any citizen of the United States who is an elector qualified to vote in Michigan." An individual is not an elector qualified to vote in Michigan—and entitled to

the rights listed in 1963 Const, art 2, § 4(1)—until the individual reaches 18 years of age. See US Const, Am XXVI; 1963 Const, art 2, § 1; *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 at 47 n 1 (CAVANAGH, J., dissenting).

The AVR Policy, which allows those who are 17½ years of age or older to be automatically registered to vote as a result of conducting business with the Secretary regarding a driver's license or personal identification card, is consistent with MCL 168.492. The statute provides:

> Each individual who has the following qualifications of an elector is entitled to register as an elector in the township or city in which he or she resides. The individual must be a citizen of the United States; not less than 17-½ years of age; a resident of this state; and a resident of the township or city. [MCL 168.492.]

Because a person under the age of 18 is not an elector qualified to vote in Michigan, and because the AVR Policy is consistent with MCL 168.492, which allows an individual who is not less than 17½ years of age to register to vote, the argument that the AVR Policy unduly burdens the right in 1963 Const, art 2, § 4(1)(d) is without merit.

## D. EQUAL PROTECTION

PTV and the Priorities USA plaintiffs argue that MCL 168.497 violates the Equal Protection Clause of the Michigan Constitution. 1963 Const, art 1, § 2 provides that "[n]o person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin." The Equal Protection Clause in the Michigan Constitution is coextensive with the Equal Protection Clause of the United States Constitution. *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 318; 783 NW2d 695 (2010). Equal protection applies when a state either classifies voters in disparate ways or places undue restrictions on the right to vote. *Obama for America v Husted*, 697 F3d 423, 428 (CA 6, 2012).

The Priorities USA plaintiffs argue that MCL 168.497(5) violates equal protection because it treats similarly situated voters differently. According to them, although Const 1963, art 2, § 4(1)(f) guarantees that all individuals who register to vote in the 14-day period shall receive a regular or absent voter ballot, under MCL 168.497(5), only those who submit a current Michigan driver's license or personal identification card as their proof of residency receive a regular or absent voter ballot. PTV similarly argues that many people who register to vote in the 14-day period are denied the right to receive a regular or absent voter ballot. The basis for these arguments is that a challenged ballot does not constitute a regular or absent voter ballot. But, as previously discussed, a challenged ballot is a regular or absent voter ballot. As also laid out previously, a challenged ballot does not lose its character as a secret ballot unless the election is contested. Regardless how an individual provides proof of residency, as defined in MCL 168.497, the individual receives a regular or absent voter ballot that is also a secret ballot. Similarly situated voters are not treated differently under MCL 168.497(5).

The Priorities USA plaintiffs argue that the Legislature's definition of proof of residency in MCL 168.497 severely burdens the right to vote because it has, and will, disenfranchise

hundreds, if not thousands, of individuals in Michigan who are qualified to vote. According to the Priorities USA plaintiffs, strict scrutiny should be applied to the definition.

Every election law, "whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends." *Anderson v Celebrezze*, 460 US 780, 788; 103 S Ct 1564; 75 L Ed 2d 547 (1983).[9] Consequently, subjecting every voting regulation to strict scrutiny, thereby requiring that the regulation be narrowly tailored to advance a compelling state interest, would tie the hands of states seeking to assure that elections are operated equitably and efficiently. *Burdick v Takushi*, 504 US 428, 433; 112 S Ct 2059; 119 L Ed 2d 245 (1992). In *Burdick*, the United States Supreme Court held that "a more flexible standard" applies:

> A court considering a challenge to a state election law must weigh the "character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."
>
> Under this standard, the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions. [*Id.* at 434 (citations omitted).]

See also *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich at 21-22, where the Supreme Court, after quoting these two paragraphs, stated:

> Thus, the first step in determining whether an election law contravenes the constitution is to determine the nature and magnitude of the claimed restriction inflicted by the election law on the right to vote, weighed against the precise interest identified by the state. If the burden on the right to vote is severe, then the

---

[9] Regardless whether the right to vote, following the passage of Proposal 3, is now an expressly enumerated right in the Michigan Constitution, the United States Supreme Court has recognized that the right to vote is a " 'a fundamental political right' " that "is preservative of other basic and civil political rights." *Reynolds v Sims*, 377 US 533, 562; 84 S Ct 1362; 12 L Ed 2d 506 (1964) (citation omitted). A citizen has "a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn*, 405 US at 336. The right to vote, however, is not absolute; a state has the power to impose voter qualifications, and to regulate access to the franchise in other ways. *Id.*; see also 1963 Const, art 2, § 4(2).

regulation must be "narrowly drawn" to further a compelling state interest. However, if the restriction imposed is reasonable and nondiscriminatory, then the law is upheld as warranted by the important regulatory interest identified by the state. The United States Supreme Court has stressed that each inquiry is fact and circumstance specific, because "[n]o bright line separates permissible election-related regulation from unconstitutional infringements[.]" [Citation omitted.]

In resolving an equal protection challenge to an election law under the Michigan Constitution, this Court applies the *Burdick* test. *Id.* at 35.

The Legislature's definition of proof of residency does not impose a severe burden on the right to vote. Because Const 1963, art 2, § 4(1) does not define proof of residency, the Legislature provided a definition in MCL 168.497, and the Legislature's definition allows individuals to provide proof of residency with a broad array of ordinary, common documents that are available to persons of all voting ages. The Priorities USA plaintiffs have presented evidence that there are individuals who are qualified to vote and who could not provide proof of residency, as defined in MCL 168.497, in the 14-day period leading up to the March 2020 presidential primary.

However, in arguing that the Legislature's definition of proof of residency has, and will, disenfranchise these individuals, the Priorities USA plaintiffs fail to recognize that an individual can register to vote in several ways. An individual can register to vote by mailing a completed voter registration application on or before the 15th day before the election. 1963 Const, art 2, § 4(1)(e). An individual can register to vote by appearing in person and submitting a completed voter registration application on or before the 15th day before the election. 1963 Const, art 2, § 4(1)(f)(1). See also MCL 168.497(1), which allows an individual to register to vote in person, by mail, or online until the 15th day before the election. Additionally, an individual can register to vote in the 14-day period by appearing in person, submitting a completed voter registration application, and providing proof of residency. 1963 Const, art 2, § 4(1)(f)(2).

The Priorities USA plaintiffs make no claim that any person who is unable to provide proof of residency, as defined in MCL 168.497, in the 14-day period would not be able to register to vote on or before the 15th day before the election. Notably, election days are set by the Michigan Constitution and by statute. See 1963 Const, art 2, § 5; MCL 168.641. Consequently, one should not be uninformed regarding when an election is to be held. Furthermore, it is not unreasonable to expect an individual who wishes to vote in an election, but who is not registered to vote or who has moved since registering to vote, to make inquiries or conduct research—in advance of the election—regarding how to register to vote. In doing so, an individual can learn the different options for registering to vote and the documents that are needed for each method. These inquiries are not a severe or substantial burden. Cf. *Crawford v Marion Co Election Bd*, 553 US 181, 198; 128 S Ct 1610; 170 L Ed 2d 574 (2008) (opinion by STEVENS, J.) (indicating that the inconvenience for those who need a photo identification to vote by gathering the required documents, making a trip to the bureau of motor vehicles, and posing for a photograph does not qualify as a substantial burden); *id.* at 205 (SCALIA, J., concurring) (stating that burdens are severe if they go beyond the merely inconvenient and that "[o]rdinary and widespread burdens, such as those requiring 'nominal effort' of everyone, are not severe") (citation omitted). Furthermore, while the Priorities USA plaintiffs claim that the Legislature's definition of proof of residency is narrow, they make no claim that a more expansive list of specific documents, such as those which the Secretary allows

-19-

to constitute proof of residency when one applies for a driver's license or personal identification card,[10] would allow a significant number of individuals who cannot provide proof of residency, as defined by MCL 168.497, to provide it.

The Legislature's definition of proof of residency in MCL 168.497 is a reasonable, nondiscriminatory restriction that applies to all individuals who seek to register to vote in the 14-day period. See *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 497 Mich at 25. It does not, therefore, violate equal protection of the laws.

Furthermore, the Legislature's definition of proof of residency is warranted by the state's regulatory interests. *Id.* at 22. The Legislature has constitutional authority to enact laws to preserve the purity of elections, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting. 1963 Const, art 2, § 4(2). These obligations include ensuring that fraudulent voting does not dilute the votes of lawful voters. *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 497 Mich at 19-20. Because a person's residence dictates which candidates and proposals the person can vote for, see MCL 168.492, the Legislature has an interest in ensuring that only residents of a city or township vote in that city or township. By defining proof of residency, a phrase undefined by 1963 Const, art 2, § 4(1), the Legislature has enacted a statute that helps to preserve the purity of elections and aids in providing for a system of voter registration. The clerks of Michigan's cities and townships, as well as those qualified to vote in Michigan, now know what documents are needed to establish proof of residency in the 14-day period.

Furthermore, the Legislature's definition of proof of residency is a reasonable means to prevent voter fraud. By defining proof of residency as requiring either a current Michigan driver's license or personal identification or a utility bill, bank statement, paycheck, government check, or other government document with the person's name and current address, the Legislature has required the person to provide a document—created by a neutral, detached third party—that connects the person with their place of residence.

We reject the Priorities USA plaintiffs' claim that voter fraud does not justify the Legislature's definition of proof of residency because voter fraud is not a problem in Michigan and there is no reason to believe that voter fraud would be more prevalent during the 14-day period than in any preceding period. Recall that it is the Michigan Constitution that requires different treatment of persons who register to vote in person on or before the 15th day before the election and those who register in the 14-day period. See 1963 Const, art 2, § 4(1)(f).[11] Additionally, the

---

[10] These documents include a credit card bill, bank statement, Michigan school transcript, mortgage, lease, or rental agreement, insurance policy, and vehicle title and registration. See Michigan Secretary of State, *Driver's License or ID Requirements*, SOS-428 (June 2020).

[11] "[T]he primary objective of constitutional interpretation, not dissimilar to any other exercise in judicial interpretation, is to faithfully give meaning to the intent of those who enacted the law." *Nat'l Pride at Work, Inc v Governor*, 481 Mich 56, 67; 748 NW2d 524 (2008). Under 1963 Const, art 2, § 4(1)(f), when a person registers to vote in person, the documents that the person must present to the election official depends on when the person registers to vote. If the person registers

-20-

Legislature was not required to wait until there was proven voter fraud during the 14-day period before it could enact a definition of proof of residency. See *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich at 26-27, where the Supreme Court rejected the argument that the state's interest in preventing in-person voter fraud was illusory because there was no significant evidence of such fraud:

> [T]here is no requirement that the Legislature "prove" that significant in-person voter fraud exists before it may permissibly act to prevent it. The United States Supreme Court has explicitly stated that "elaborate, empirical verification of the weightiness of the State's asserted justifications" is *not required*. Rather, a state is permitted to take prophylactic action to respond to potential electoral problems:
>
> > To require States to prove actual [harm] as a predicate to the imposition of reasonable . . . restrictions would invariably lead to endless court battles over the sufficiency of the "evidence" marshaled by a State to prove the predicate. Such a requirement would necessitate that a State's political system sustain some level of damage before the legislature could take corrective action. Legislatures, we think, should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively, provided that the response is reasonable and does not significantly impinge on constitutionally protected rights.
>
> Therefore, the state is not required to provide *any* proof, much less "significant proof," of in-person voter fraud before it may permissibly take steps to prevent it. [Citations omitted.]

We also reject the Priorities USA plaintiffs' claim that the Legislature's definition of proof of residency was not justified because other statutes adequately prevent voter fraud. They point to MCL 168.933, which provides that "[a] person who makes a false affidavit or swears falsely while under oath . . . for the purpose of securing registration, for the purpose of voting at an election . . . is guilty of perjury." In *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich at 28 n 69, the Supreme Court rejected a similar argument that the picture identification requirement of MCL 168.523(1) was not justified because there were statutes that imposed criminal penalties for those who impersonated another for voting purposes. It explained:

---

to vote on or before the 15th day before the election the person must submit "a completed voter registration application." 1963 Const, art 2, § 4(1)(f)(1). But, if the person registers to vote during the 14-day period, the person must submit "a completed voter registration application" and provide "proof of residency." 1963 Const, art 2, § 4(1)(f)(2). Consequently, it is apparent that the voters who enacted Proposal 3 intended that those who register to vote in the 14-day period must provide additional documentation than those who register to vote on or before the 15th day before the election—in addition to submitting a completed voter registration application, they must also provide proof of residency.

> [T]hat Michigan criminalizes in-person voter fraud does not address Michigan's undisputed interest in *preventing* fraud in the first instance, nor do criminal sanctions provide a means of *detecting* fraud. Moreover, it is unclear how the imposition of criminal penalties could remedy the harm inflicted on our electoral system by a fraudulently cast ballot. [*Id.*]

Accordingly, MCL 168.933 does not dispel the Legislature's interest in preventing voter fraud during the 14-day period.

Finally, PTV, in arguing that MCL 168.497 violates equal protection, focuses on the burden that is caused by the actual issuance of challenged ballots. According to PTV, because it takes longer for a challenged ballot to be issued, which results in longer lines, the requirement that challenged ballots be issued to those who register in the 14-day period without a current Michigan driver's license or personal identification card burdens the right to vote.

The burden of long lines, which results in people having to wait longer to register to vote, is not a severe burden. Long lines are certainly an inconvenience, but a burden must go beyond mere inconvenience to be severe. *Crawford*, 553 US at 205 (SCALIA, J., concurring). Additionally, the burden is justified by the state's interest in preventing voter fraud. See *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich at 19-20. The challenged ballot provides a procedure, in a contested election, to identify a ballot that was cast by someone who engaged in voter fraud. See MCL 168.747; *Belcher*, 402 Mich at 132. It was reasonable for the Legislature to conclude that it was less likely that those persons who register to vote in the 14-day period with a current Michigan driver's license or identification card would be committing fraud than those who register without one. Those who register to vote with a current Michigan driver's license or personal identification card have a government issued identification that contains their picture and their current address. But someone who registers to vote by providing "any other form of identification for election purposes," may have picture identification with a noncurrent address, such as a driver's license or personal identification card issued by another state, or no address for the person, such as a student photo identification card, and someone who registers to vote by submitting an affidavit that he or she does not have "identification for election purposes" simply provides no photo identification at all.

## IV. RESPONSE TO THE DISSENT

Our dissenting colleague concedes that the Legislature was within its rights to establish what constitutes "proof of residency" within the 14-day period. Indeed, the dissent states that the Legislature "can and should" provide guidance as to what is acceptable proof of residency. By making this concession, our colleague must also acknowledge that the legislative choice reflected in MCL 168.497 represents a considered policy judgment of the political branches of our government. That policy judgment is one with which our dissenting colleague clearly disagrees. Indeed, our colleague states that she might have upheld the statute had the Legislature enacted a definition of proof of residency more in line with what she considers to be its "well-understood

meaning."[12]  But in our view it is not part of the judicial role to second guess the Legislature's policy judgment in this regard, so long as what has been enacted does not run afoul of the constitution.  See *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 149; 644 NW2d 715 (2002) ("It is not the role of the judiciary to second-guess the wisdom of a legislative policy choice; our constitutional obligation is to interpret—not to rewrite—the law.").  We have laid out in painstaking detail why the statutory enactments at issue in this case are well within constitutional bounds.

Finally, the dissent posits that there is a well-accepted meaning of the term "proof of residency."  If so, why should the Legislature have need of defining the term, as the dissent concedes that it "can and should" have done?  More fundamentally, we disagree that the Legislature has substituted "proof of identity" for "proof of residency."  In the context of this statute, a State of Michigan driver's license or personal identification card is being used not as proof of identity, but as proof of residency.  Indeed, the Legislature considers it to be the highest and best proof of residency, as a prospective voter need not supply any other documentation within the 14-day period so long as the voter presents either of those documents reflecting an address within the voting jurisdiction.

## V.  CONCLUSION

We affirm the June 24, 2020 opinion and order of the Court of Claims.  The Secretary and the Legislature were entitled to summary disposition.  The Legislature's definition of proof of residency in MCL 168.497 and the requirement in MCL 168.497(5) that a challenged ballot be issued to any person who registers to vote in the 14-day period without providing a current Michigan driver's license or personal identification card does not unduly burden any of the rights in 1963 Const, art 2, § 4(1)(a) and (f).  The Secretary's AVR Policy also does not unduly burden the right in 1963 Const, art 2, § 4(1)(d).  Additionally, the Legislature's definition of proof of residency in MCL 168.497 and the requirement in MCL 168.497(5) concerning the issuance of challenged ballots do not violate equal protection.

Affirmed.

/s/ Patrick M. Meter
/s/ Michael F. Gadola

---

[12] The dissent lays out the list of documents the Secretary of State accepts as proof of residency when seeking to obtain a driver's license or personal identification card, which is more expansive than the list in MCL 169.497.  First, given the Legislature's duty to preserve the purity of elections, and to ensure that the votes of qualified electors are not unfairly diluted, the Legislature was within its rights to require a higher standard of proof of residency for voting purposes than for driving purposes.  As to the dissent's argument that the list the Legislature chose discriminates on the basis of income, we note that the more expansive list the dissent appears to prefer includes items such as utility bills, bank statements, mortgages, pay stubs, life insurance policies, and other documents that presume a certain economic status.  This appears unavoidable in any scheme designed to establish a person's residency.